UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JUSTIN BAKER,                                          Case No. 17 CV 4493
            Plaintiff,                           (RJD) (RML)

   -against-                                         **AMENDED COMPLAINT**

THE CITY OF NEW YORK, DETECTIVE                        JURY DEMAND
SALAAH BAYOUMI [SHIELD # 1056],
SERGEANT OKERA MORRISON [TAX
REG. # 928816], P.O. ADRIEN [TAX REG.
# 949969], and JOHN DOE AND
JANE DOE #1-14 (the names John and
Jane Doe being fictitious, as the true
names are presently unknown),
                Defendants.
----------------------------------------------------------------X

Plaintiff, JUSTIN BAKER, by his attorney, The Law Offices of UGO UZOH, P.C., complaining of the defendants herein, The City of New York, Detective Salaah Bayoumi [Shield # 1056], Sergeant Okera Morrison [Tax Reg. # 928816], P.O. Adrien [Tax Reg. # 949969], and John Doe and Jane Doe #1-14 (collectively, "defendants"), respectfully alleges as follows:

1.    This is an action at law to redress the deprivation of rights secured to the plaintiff under color of statute, ordinance, regulation, custom, and/or to redress the deprivation of rights, privileges, and immunities secured to the plaintiff by the Fourth, Fifth, Sixth, Eight and Fourteenth Amendments to the Constitution of the United States, and by Title 42 U.S.C. §1983, [and arising under the law and statutes of the City and State of New York].

## JURISDICTION

2.    The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1343, 28 U.S.C. § 1331 and 28 U.S.C. § 1367, and under the Fourth, Fifth, Sixth, Eight and Fourteenth Amendments to the United States Constitution.

3. As the deprivation of rights complained of herein occurred within the Eastern District of New York, venue is proper in this district pursuant to 28 U.S.C. §1391 (b) and (c).

## THE PARTIES

4. Plaintiff is and was at all times material herein a resident of the United States and the State of New York.

5. Defendant City of New York ("City") is a municipal corporation duly organized and existing under the laws of the State of New York.

6. The City of New York Police Department ("NYPD") is an agency of defendant City, and all officers referred to herein were at all times relevant to this complaint employees and agents of defendant City.

7. Defendant Detective Salaah Bayoumi [Shield # 1056] was at all times material herein a detective employed by the NYPD. He is named here in his official and individual capacities.

8. Defendant Sergeant Okera Morrison [Tax Reg. # 928816] was at all times material herein a sergeant employed by the NYPD. S/he is named here in his or her official and individual capacities.

9. Defendant P.O. Adrien [Tax Reg. # 949969] was at all times material herein a police officer employed by the NYPD. S/he is named here in his or her official and individual capacities.

10. Defendants John Doe and Jane Doe #1-14 were at all times material herein individuals and/or officers employed by the NYPD. They are named here in their official and individual capacities.

11. Defendants Bayoumi, Morrison, Adrien and John Doe and Jane Doe#1-14 are collectively referred to herein as "defendant officers".

12. At all times material to this Complaint, the defendant officers acted towards plaintiff under color of the statutes, ordinances, customs, and usage of the State and City of New York.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

13. On or about March 30, 2017, at approximately 7:30 a.m., defendant officers, acting in concert, arrested plaintiff without cause at or within the vicinity of

|    |    |
|----|----|
|    | 49 Albany Avenue, Brooklyn, New York, and charged plaintiff with PL 265.03(1)(b) 'Criminal possession of a weapon in the second degree'; PL 170.40(1) 'Criminal possession of forgery devices'; PL 165.45(4) 'Criminal possession of stolen property in the fourth degree'; PL 195.05 'Obstructing governmental administration in the second degree'; PL 220.03 'Criminal possession of a controlled substance in the seventh degree'; and PL 221.10 'Criminal possession of marihuana in the fifth degree'. |
| 14. | Plaintiff, however, did not commit any offense against the laws of New York City and/or State for which any arrest may be lawfully made. |
| 15. | Prior to the arrest, plaintiff and some of his friends were visiting the Basement apartment at the aforesaid location of the arrest. |
| 16. | As plaintiff and his friends were inside the Basement apartment socializing, they were startled by heavy footsteps, movements, noise and commotion coming from upstairs. |
| 17. | Believing that the location was being robbed and fearing for their safety, plaintiff and his friends ran away from the Basement apartment. |
| 18. | As plaintiff ran towards the backyard, he was pursued by several individuals on street clothes who he later learned to be defendant officers. |
| 19. | Shortly thereafter, at least two of the defendant officers jumped on top of the plaintiff. |
| 20. | Defendant officers kicked, hit and punched the plaintiff on various parts of his body, and held him down with their feet on his back pinning him face down to the floor. |
| 21. | Eventually, defendant officers tightly handcuffed the plaintiff with his hands placed behind his back. |
| 22. | After handcuffing the plaintiff, defendant officers pulled him up from the floor. |
| 23. | Defendant officers then subjected the plaintiff to an illegal search. |
| 24. | Defendant officers did not recover any contraband from their unlawful search of the plaintiff. |
| 25. | Nonetheless, defendant officers still arrested the plaintiff. |

26. Plaintiff was caused to sustain serious injuries on various parts of his body as a result of the conduct of defendant officers.

27. Because of his injuries, plaintiff requested to be transported to the hospital for medical treatment and care.

28. Defendant officers however denied plaintiff's entreaties and refused to provide the plaintiff with medical treatment and care.

29. After falsely arresting the innocent plaintiff, defendant officers transported the plaintiff to NYPD-79th Precinct.

30. While at the precinct, defendant officers further subjected the plaintiff to strip/body cavity searches.

31. Defendant officers still did not recover any contraband from their illegal and warrantless search of the plaintiff.

32. Notwithstanding, defendant officers proceeded to unlawfully collect the plaintiff's DNA.

33. After detaining the plaintiff for a lengthy period of time at the precinct, plaintiff was transported to the Central Booking to await arraignment.

34. While plaintiff was awaiting arraignment, defendant officers met with prosecutors employed by the Kings County District Attorney's Office.

35. During this meeting, defendant officers falsely stated to the prosecutors, among other things, that the plaintiff was in possession of a weapon, forgery devices, stolen property, controlled substance and marihuana, and also obstructed governmental administration.

36. Based on the false testimony of the defendant officers, the prosecutors initiated criminal actions against the plaintiff.

37. The prosecutors subsequently conducted an independent investigation and concluded that there was no evidence of any crime committed by the plaintiff.

38. As a result, the prosecutors declined to prosecute the plaintiff.

39. On or about April 1, 2017, after detaining the plaintiff for a lengthy period of time, defendant officers summarily released the plaintiff from his unlawful detention.

40. At the time of his arrest, defendant officers seized and/or appropriated to themselves several of plaintiff's properties including, but not limited to, a black/silver iPhone 6, a white/gold iPhone 7, and a total amount of $49.00.

41. Defendant officers did not provide the plaintiff with any voucher for his said properties.

42. Defendant officers did not provide plaintiff with any information as to how to retrieve or recover his properties and have refused to return plaintiff's aforesaid properties.

43. Even though the plaintiff did not commit any crime, and the prosecutors declined to prosecute the plaintiff, defendant officers retain the plaintiff's DNA and have refused to destroy or return said DNA to the plaintiff.

44. Each and every officer who responded to and/or was present at the location of the arrest(s) and at the precinct and/or station house knew and was fully aware that the plaintiff did not commit any crime or offense, and had a realistic opportunity to intervene to prevent the harm detailed above from occurring.

45. Nonetheless, defendants did absolutely nothing to discourage and prevent the harm detailed above from occurring and failed to protect and ensure the safety of the plaintiff.

46. As a result of the aforesaid actions by defendants, plaintiff suffered and continues to suffer emotional distress, fear, embarrassment, humiliation, shock, discomfort, loss of liberty, wages and financial losses, pain and damage, and damage to reputation.

FIRST CAUSE OF ACTION: FALSE ARREST - against defendant officers

47. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 46 of this complaint as though fully set forth herein.

48. The conduct of defendant officers, as described herein, amounted to false arrest.

49. Such conduct described herein violated plaintiff's rights under 42 U.S.C. § 1983 and the Fourth, Fifth, Sixth, Eight and Fourteenth Amendments to the United States Constitution.

50. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

SECOND CAUSE OF ACTION: EXCESSIVE USE OF FORCE - against defendant officers

51. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 50 of this complaint as though fully set forth herein.

52. The conduct of defendant officers, as described herein, amounted to excessive use of force.

53. Such conduct described herein violated plaintiff's rights under 42 U.S.C. § 1983 and the Fourth, Fifth, Sixth, Eight and Fourteenth Amendments to the United States Constitution.

54. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

THIRD CAUSE OF ACTION: FAILURE TO INTERVENE - against defendant officers

55. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 54 of this complaint as though fully set forth herein.

56. That each and every officer and/or individual who responded to, had any involvement and/or was present at the location of the arrest, assault and/or incident described herein knew and was fully aware that plaintiff did not commit any crime or offense, and had a realistic opportunity to intervene to prevent the harm detailed above from occurring.

57. Nonetheless, defendant officers did absolutely nothing to discourage and prevent the harm detailed above from occurring and failed to intervene.

58. Such conduct described herein violated plaintiff's rights under 42 U.S.C. § 1983 and the Fourth, Fifth, Sixth, Eight and Fourteenth Amendments to the United States Constitution.

59. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

FOURTH CAUSE OF ACTION: UNREASONABLE DETENTION - against defendant officers

60. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 59 of this complaint as though fully set forth herein.

61. Defendant officers denied plaintiff his due process right to be free from continued detention after it was or should have been known that plaintiff was entitled to release.

62. The conduct of defendant officers, as described herein, amounted to unreasonable detention.

63. Such conduct described herein violated plaintiff's rights under 42 U.S.C. § 1983 and the Fourth, Fifth, Sixth, Eight and Fourteenth Amendments to the United States Constitution.

64. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

FIFTH CAUSE OF ACTION: FABRICATION OF EVIDENCE - against defendant officers

65. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 64 of this complaint as though fully set forth herein.

66. Defendant officers manufactured evidence of criminality against the plaintiff which the prosecutors relied upon to initiate criminal actions against the plaintiff.

67. The conduct of defendant officers, as described herein, amounted to fabrication of evidence.

68. Such conduct described herein violated plaintiff's rights under 42 U.S.C. § 1983 and the Fourth, Fifth, Sixth, Eight and Fourteenth Amendments to the United States Constitution.

69. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

SIXTH CAUSE OF ACTION: STRIP/BODY CAVITY SEARCHES & UNREASONABLE SEARCH & SEIZURE - against defendant officers

70. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 69 of this complaint as though fully set forth herein.

71. Defendant officers subjected plaintiff to degrading and humiliating strip/body cavity searches and unreasonable search & seizure.

72. Such conduct described herein violated plaintiff's rights under 42 U.S.C. § 1983 and the Fourth, Fifth, Sixth, Eight and Fourteenth Amendments to the United States Constitution.

73. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

SEVENTH CAUSE OF ACTION: DELIBERATE INDIFFERENCE - against defendant officers

74. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 73 of this complaint as though fully set forth herein.

75. Defendant officers denied plaintiff treatment needed to remedy his serious medical conditions and did so because of their deliberate indifference to plaintiff's need for medical treatment and care.

76. Such conduct described herein violated plaintiff's rights under 42 U.S.C. § 1983 and the Fourth, Fifth, Sixth, Eight and Fourteenth Amendments to the United States Constitution.

77. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

EIGHTH CAUSE OF ACTION: CONSPIRACY - against defendant officers

78. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 77 of this complaint as though fully set forth herein.

79. In an effort to find fault to use against the plaintiff who is black, defendant officers met with themselves and with several other individuals on numerous occasions (including but not limited to the March 30, 2017 date of arrest) and agreed to deprive plaintiff of his constitutional rights secured by 42 U.S.C. § 1983 and the Fourth, Fifth, Sixth, Eight and Fourteenth Amendments to the United States Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

80. Such conduct described herein violated plaintiff's rights under 42 U.S.C. § 1983 and the Fourth, Fifth, Sixth, Eight and Fourteenth Amendments to the United States Constitution.

81. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of defendant officers, individually and severally.

NINTH CAUSE OF ACTION: FAILURE TO TRAIN/SUPERVISE/DISCIPLINE/SCREEN AND MUNICIPAL POLICY - against defendant City

82. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 81 of this complaint as though fully set forth herein.

83. Defendant City of New York, acting through the New York Police Department, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise or discipline its police officers concerning correct practices in conducting investigations, the use of force, interviewing of witnesses and informants, assessment of the credibility of witnesses and informants, reasonable search of individuals and/or their

|  |  |
|---|---|
|  | properties, the seizure, voucher and/or release of seized properties, obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and obligation to effect an arrest only when probable cause exists for such arrest. |
| 84. | Defendant City of New York, acting through aforesaid NYPD, had actual and/or de facto policies, practices, customs and/or usages of wrongfully arresting, illegally stopping, frisking, searching, seizing, abusing, humiliating, degrading and/or maliciously prosecuting individuals who are members of racial/ethnic minority groups such as plaintiff, who is black, on the pretext that they were involved in narcotics, drugs, guns and/or other illicit activities. |
| 85. | Further, the existence of the aforesaid unconstitutional policies, practices, customs and/or usages may be inferred from repeated occurrences of similar wrongful conduct. |
| 86. | For example, in *Jones v. City of New York*, 603 Fed. Appx. 13 (2d Cir. 2015), Police Officer David Rodriguez arrested the plaintiff in that matter, Javier Jones, merely because he was allegedly informed that Mr. Jones was in the company of another individual named Frantz Machon who allegedly did display a weapon. |
| 87. | Officer Rodriguez was questioned at his deposition as to whether it is NYPD's policy to charge all members of a group with criminal possession of a weapon when only one group member is alleged to have possessed a firearm. |
| 88. | Officer Rodriguez, as the Second Circuit observed, testified that although NYPD "does not have an official policy of charging all members of a group with criminal possession of a weapon when only one group member is alleged to have possessed a firearm, [] 'That is what we do.'" *Jones*, 603 Fed. Appx. at 15. |
| 89. | Officer Rodriguez did further elaborate that "It is like an accomplice to the person with the firearm[]" and that "the normal procedure is when you have a situation like this, everyone gets charged with the firearm because we are |

10

going off on what the victim said . . . if the victim said that [Machon] had a firearm, that is going to be the charge for everyone."

90. As the plaintiff in Jones successfully argued before the Second Circuit, Officer Rodriguez's testimony shows that he "is unaware that he does not have probable cause to arrest a mere bystander[]" which confirms the fact that "he has not been trained on this issue by the City [and NYPD]."

91. Here, as was true in Jones, the City and the NYPD has failed to train defendant officers and has failed to instill in them the fact that they lack probable cause to arrest a mere bystander or an individual such as the plaintiff who was merely socializing with his friends and neighbors.

92. Importantly, as noted above, the plaintiff was never in possession of any weapon, forgery devices, stolen property, controlled substance and/or marihuana, and did not obstruct any governmental administration at any time.

93. In addition to the above, NYPD Police Officer Michael Carsey was recently convicted of felonies for lying under oath and falsifying information while applying for a search warrant.

94. Police Officer Carsey's supervisor, Sergeant William Eiseman, had earlier admitted to fabricating facts to justify searching vehicles and homes for cocaine, marijuana and guns, filing false information to obtain search warrants and performing illegal searches of vehicles and homes. That Sergeant Eiseman admitted to perjury and fabricating evidence against innocent persons that he falsely arrested and charged with possession of narcotics and/or illegal drugs, and also admitted to training numerous young police officers to commit similar crimes and/or offenses.

95. In addition, in or about October 2011, Detective Stephen Anderson testified against Detective Jason Arbeeny, a veteran of the NYPD. That Detective Anderson testified that, among other things, it is a common practice within the NYPD to plant narcotics and/or illegal drugs -- commonly known within the NYPD as "flaking" -- on innocent persons in order to meet arrest quotas. Detective Anderson referred to the practice of planting narcotics and/or

11

|    |    |
|----|----|
|    | illegal drugs on innocent persons as "attaching bodies" to the narcotics and/or illegal drugs. According to Detective Anderson, this practice "was something I was seeing a lot of, whether it was from supervisors or undercovers and even investigators." |
| 96. | Regarding the issue of arrest quotas, Detective Anderson confirmed that the NYPD requires officers to fill quotas, and testified that even as a detective "you still have a number [of arrests] to reach while you are in the narcotics division." |
| 97. | Recently, a jury determined that officers of the NYPD are permitted, as a policy and/or practice, to fill their arrest quotas by making unlawful arrests. *See Bryant v. City of New York*, Index No. 22011/07 (Sup. Ct. County of Kings Feb. 18, 2011). |
| 98. | Prior to his testimony, Detective Anderson and his partner provided false testimony in court claiming that they purchased cocaine from certain individuals who as surveillance video later confirmed did not have any sort of contact or communication with Detective Anderson and his partner during the time period that Detective Anderson and his partner claimed to have purchased the controlled substances and/or illegal drugs. |
| 99. | Detective Arbeeny was subsequently convicted of planting controlled substances and/or illegal drugs on a woman and her boyfriend, and was convicted of the charges against him including official misconduct, offering a false instrument for filing and falsifying business records. |
| 100. | Recently, the New York Supreme Court, County of Kings, Criminal Term, Gustin L. Reichbach, J., determined that the NYPD's drug unit has a system of flawed procedures that caused Detective Arbeeny's unlawful actions. Judge Reichbach further determined that the NYPD's drug unit has a widespread culture of corruption and has adopted a "cowboy culture" and practice which he described as "[a]nything goes in the never-ending war on drugs." That Judge Reichbach expressed shock at what he described as "the seeming pervasive scope of misconduct [and even worse] . . . the seeming casualness by which such conduct is employed." |

101. Further, in or about 2008, the New York Supreme Court, County of Kings, Criminal Term, Albert Tomei, J., determined at a Mapp hearing in *People v. Simms*, Indictment No. 11263/07, which was held on or about September 9, 2008, that the police officers involved in the arrest in that matter are "not credible" and that the police officers' "testimony is so obviously fabricated . . . to avoid any Constitutional objections the defendant may have . . . and that [any] property taken . . . is to be suppressed because it was the product of an unlawful arrest and search and seizure."

102. In addition to the instances of police misconduct described above, several officers of the NYPD -- including but not limited to Detective Christopher Perino, Police Officer Michael Daragjati, Police Officer Henry Tavarez, Police Officer William Masso, Detective Oscar Sandino, Detective Sean Johnstone, Sergeant Michael Arenella, Sergeant Jerry Bowens, Police Officer Michael Pena, Police Officer Nicholas Mina, Detective Kevin Spellman and Police Officer Admir Kacamakovic -- have recently been convicted of various similar crimes as those described herein including but not limited to falsifying police reports, perjury, corruption, robbery, gun running, drug dealing, prostitution, theft and assault. Former NYPD Commissioner Bernard Kerik was also recently convicted of corruption and similar crimes as those described herein.

103. In addition to the named individual defendants, several officers of the NYPD assigned to NYPD-79th Precinct -- as defendant officers -- routinely make unlawful arrests charging innocent persons with various crimes and/or offenses.

104. Most of the arrests and charges made by officers assigned to NYPD-79th Precinct are usually voided and/or dismissed by prosecutors for lack of evidence.

105. Defendant City of New York has settled numerous lawsuits brought in this district against several officers assigned to NYPD-79th Precinct concerning similar arrests and charges as those described herein. *See*, *e.g.*, *Aaron Tyler v. City of New York* (16 CV 2750); *Linda Hoover v. City of New York* (15 CV

5838); *Ashley Townsend v. City of New York* (15 CV 5457); *Ronald Middleton v. City of New York* (14 CV 7389); *Ashley Painson v. City of New York* (14 CV 2788); *Shamarlon Villafana v. City of New York* (13 CV 3591); *Anderson Charles v. City of New York* (13 CV 2546); *Latisha Thomas v. City of New York* (12 CV 5061); *Cymantha Holly v. City of New York* (12 CV 4323); *Nicholls Olwyn v. City of New York* (08 CV 2098).

106. Defendant City of New York maintained the above described policies, practices, customs or usages knowing fully well that the policies, practices, customs or usages lead to improper conduct by its police officers and employees. In failing to take any corrective actions, defendant City of New York acted with deliberate indifference, and its failure was a direct and proximate cause of plaintiff's injuries as described herein.

107. The actions of defendants, acting under color of State law, deprived plaintiff of his due process rights, and rights, remedies, privileges, and immunities under the laws and Constitution of the United States, treatise, ordinances, customary international law and norms, custom and usage of a right; in particular, the right to be secure in his person and property, to be free from abuse of process, the excessive use of force and the right to due process.

108. By these actions, defendants have deprived plaintiff of rights secured by treatise, ordinances, customary international law and norms, custom and usage of a right, and the Fourth, Fifth, Sixth, Eight and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983.

TENTH CAUSE OF ACTION: NEW YORK STATE CONSTITUTION, ARTICLE I, §§ 5, 6, 8, 11 & 12 - against defendants

109. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 108 of this complaint as though fully set forth herein.

110. By reason of the foregoing, and by arresting, detaining and imprisoning plaintiff without probable cause or reasonable suspicion, and harassing and assaulting him and depriving him of due process and equal protection of laws, defendants deprived plaintiff of rights, remedies, privileges, and

14

        immunities guaranteed to every New Yorker by Article I, § 5 (prohibiting cruel and unusual punishments), Article 1, § 6 (providing for due process), Article 1, § 8 (guaranteeing freedom of speech), Article 1, § 11 (prohibiting discrimination in civil rights and providing for equal protection of laws) & Article I, § 12 (prohibiting unreasonable searches & seizures) of the New York Constitution.

111. In addition, the individual officers conspired among themselves and conspired with other individuals to deprive plaintiff of his constitutional rights secured by Article I, §§ 5, 6, 8, 11 & 12 of the New York Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

112. The individual officers acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as officers, agents, or employees. The individual officers' acts were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers. The individual officers acted willfully, knowingly, and with the specific intent to deprive plaintiff of his constitutional rights secured by Article I, §§ 5, 6, 8, 11 & 12 of the New York Constitution.

113. Defendants, their officers, agents, servants, and employees were responsible for the deprivation of plaintiff's state constitutional rights.

ELEVENTH CAUSE OF ACTION: TORTS (FALSE ARREST/IMPRISONMENT) - against defendants

114. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 113 of this complaint as though fully set forth herein.

115. The conduct of the defendants, as described herein, amounted to false arrest/imprisonment.

116. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

TWELFTH CAUSE OF ACTION: TORTS (ASSAULT AND BATTERY) - against defendants

117. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 116 of this complaint as though fully set forth herein.

118. By reason of and as a consequence of the conduct of defendant officers, plaintiff sustained bodily injuries with the accompanying pain.

119. The conduct of the defendants, as described herein, amounted to assault and battery.

120. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

THIRTEENTH CAUSE OF ACTION: TORTS (STRIP/BODY CAVITY SEARCHES & UNREASONABLE SEARCH & SEIZURE) - against defendants

121. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 120 of this complaint as though fully set forth herein.

122. The conduct of the defendants, as described herein, amounted to degrading, humiliating and unreasonable search and seizure, and unreasonable detention.

123. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

FOURTEENTH CAUSE OF ACTION: TORTS (NEGLIGENCE AND/OR BREACH OF SPECIAL DUTY OR RELATIONSHIP) - against defendants

124. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 123 of this complaint as though fully set forth herein.

125. Defendants failed to properly care, supervise and protect the plaintiff, failed to ensure the plaintiff's health and safety, and were careless and negligent in their treatment of the plaintiff.

126. The conduct of the defendants, as described herein, amounted to negligence and breach of special duty or relationship.

127. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

FIFTEENTH CAUSE OF ACTION: TORTS (DEFAMATION) - against defendants

128. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 127 of this complaint as though fully set forth herein.

129. Defendants falsely alleged that the plaintiff was in possession of a narcotic drug with intent to sell such drug.

130. On or about March 30, 2017, defendants published their aforesaid false allegations to plaintiff's colleagues, neighbors, friends and family including, but not limited to, Jeremy Ambrose, Kevin Mills and Marcus Martin.

131. The above statements by the defendants were made without any just cause or truth to the statements. Additionally, defendants made such statements maliciously, knowing said statements to be absolutely false.

132. Defendants made aforesaid false and malicious statements with the sole intent of exposing plaintiff to public contempt, hatred, ridicule, aversion, disgrace and to induce an evil opinion of the plaintiff and cause plaintiff to be shunned or avoided and injure plaintiff in his employment or occupation.

133. By reason of defendants' statements and actions, plaintiff has been injured in his good name and reputation and has suffered and continues to suffer great pain and mental anguish and has been held and continues to be held in ridicule and contempt by his family members, neighbors, colleagues, friends, acquaintances and the public.

134. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

SIXTEENTH CAUSE OF ACTION: TORTS (NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS) - against defendants

135. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 134 of this complaint as though fully set forth herein.

136. The defendants engaged in extreme and outrageous conduct, intentionally and recklessly causing severe emotional distress to plaintiff.

137. Plaintiff's emotional distress has damaged his personal and professional life because of the severe mental pain and anguish which were inflicted through deliberate and malicious actions including the arrest, assault, detention and imprisonment by defendants.

138. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

SEVENTEENTH CAUSE OF ACTION: NEGLIGENT HIRING AND RETENTION OF EMPLOYMENT SERVICES - against defendant City

139. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 138 of this complaint as though fully set forth herein.

140. Upon information and belief, defendant City, through its various agencies and departments including the defendants in this action, owed a duty of care to plaintiff to prevent the physical and mental abuse sustained by plaintiff.

141. Upon information and belief, defendant City, through its various agencies and departments including the defendants in this action, owed a duty of care to plaintiff because under the same or similar circumstances a reasonable, prudent and careful person should have anticipated that an injury to plaintiff or to those in a like situation would probably result from such conduct described herein.

142. Upon information and belief, defendant City knew or should have known through the exercise of reasonable diligence that defendant officers were not prudent and were potentially dangerous.

143. Upon information and belief, defendant City's negligence in hiring and retaining defendant officers proximately caused plaintiff's injuries.

WHEREFORE, plaintiff respectfully prays judgment as follows:

a. For compensatory damages against all defendants in an amount to be proven at trial;

      b.      For exemplary and punitive damages against all defendants in an amount to be proven at trial;

      c.      For costs of suit herein, including plaintiff's reasonable attorney's fees; and;

      d.      For such other and further relief as the court deems proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury.

Dated: Brooklyn, New York
       January 26, 2018

                         UGO UZOH, P.C.

                         /s/

                         _____

           By:     Ugochukwu Uzoh (UU-9076)
                   Attorney for the Plaintiff
                   304 Livingston Street, Suite 2R
                   Brooklyn, N.Y. 11217
                   Tel. No: (718) 874-6045
                   Fax No: (718) 576-2685
                   Email: u.ugochukwu@yahoo.com